## Richmond

### DANIEL MACE

### V.

### MERCHANTS DELIVERY MOVING & STORAGE AND HOME INDEMNITY COMPANY

October 10, 1980.

Record No. 790433.

Present: All the Justices.

*R. Lee Yancey* (*Robert L. Morrison, Jr.,* on brief), for appellant.
*James A. L. Daniel* (*M. Lee Stilwell, Jr.; Warren, Parker, Williams and Stilwell,* on brief), for appellees.

PER CURIAM.

In this appeal, we must determine whether the Industrial Commission erred in terminating workmen's compensation benefits previously awarded to Daniel Mace, the appellant.

On November 23, 1977, Mace was injured in an accident arising out of his employment with Merchants Delivery Moving & Storage. On March 10, 1978, the employer, Mace, and the employer's insurer, Home Indemnity Company, entered into an agreement, subsequently approved by the Commission, providing compensation benefits of $50.45 per week. On April 27, 1978, the employer and the insurer filed an application for a termination of benefits on the ground of a change in condition. Code § 65.1-99. Following a hearing on August 25, 1978, a deputy commissioner entered an order vacating the prior award as of April 26, 1978, but reinstating the award as of July 24, 1978. The appellees petitioned the full Commission for a review of the deputy commissioner's decision. On February 14, 1979, the Commission, concluding that "the evidence fails to preponderate in proving any change in condition subsequent to the date on which the award was terminated," set aside the deputy commissioner's reinstatement of benefits and denied Mace's request for additional disability payments.

From December 13, 1977, through April 6, 1978, Mace was treated by Dr. Robert A. Kuhn, a neurologist. Dr. Kuhn's initial examination on December 13 revealed no objective symptoms of physiological abnormality. At that time, Dr. Kuhn noted "probable neurasthenia with diffuse neuritis"[1] as the working diagnosis, prescribed

---

[1] Neurasthenia is "a feeling of fatigue, worry, inadequacy, and lack of zest and interest often accompanied by headache, undue sensitiveness to light and noise, and disturbances of digestion and circulation." Webster's Third International Dictionary 1520 (1961). Neuritis is "an inflammatory or degenerative lesion of a nerve characterized by pain, sensory disturbances, paralysis, muscle atrophy, and impaired or lost reflexes in the part innervated." *Id.* at 1520.

The memorandum of agreement providing workmen's compensation benefits to Mace likewise noted Mace's injury to be "probable neurasthenia with diffuse neuritis."

multi-vitamin therapy and a five-day course of physiotherapy, and estimated Mace would be able to return to work in two weeks. Although Mace's subjective symptoms of tingling in his arms and legs persisted throughout the course of Dr. Kuhn's treatment, Dr. Kuhn's three subsequent examinations failed to reveal any objective symptoms of a physiological disorder. On April 6, 1978, Dr. Kuhn concluded that Mace was "fully capable of returning to unrestricted work" and that further medical treatment was unnecessary unless some further symptoms supervened.

Dissatisfied with Dr. Kuhn's medical treatment, Mace sought the services of Dr. Charles A. Whitten, another neurologist. Noting Mace had a "tender brachial plexus" [2] but finding no other physiological abnormalities, Dr. Whitten stated "[t]he only thing I can surmise is the patient had a minor bilateral brachial plexus stretch." Dr. Whitten referred Mace to Dr. Victor Oberheu, a radiologist, for further testing. Although Dr. Oberheu's examinations revealed minor physiological abnormalities, he concluded these conditions were probably congenital or were related to an old injury. Dr. Oberheu found no evidence of a recent fracture, dislocation, or other significant abnormality. Neither Dr. Whitten nor Dr. Oberheu made any statement concerning Mace's ability to return to regular employment.

On appeal, Mace contends that, contrary to *Foust Coal Co.* v. *Messer,* 195 Va. 762, 80 S.E.2d 533 (1954), the Commission placed the burden of proof upon him, rather than the parties that had applied for a review of the prior award. We find it unnecessary, however, to address this issue. Regardless of the placement of the burden of proof, the evidence submitted in this case could justify only one conclusion. Dr. Kuhn, Mace's attending physician for several months, found no objective symptoms of physiological disorder and concluded without equivocation that Mace was "fully capable of returning to unrestricted work." Mace produced no medical evidence establishing his inability to resume his employment. Dr. Whitten only "surmise[d]" that Mace "had a minor bilateral brachial plexus stretch." His report fails to state whether such an injury would render Mace incapable of returning to work. Further testing conducted by Dr. Oberheu revealed no evidence of "a recent fracture, dislocation, or other significant abnormality." In light of Dr. Kuhn's unequivocal statement that Mace was fully able to return to unrestricted work and the absence of any medical evidence

---

[2] The brachial plexus is "a complex network of nerves that is formed chiefly by the lower four cervical and first thoracic nerves, lies partly within the axilla, and supplies nerves to the chest, shoulder, and arm." Webster's Third International Dictionary 264 (1961).

to the contrary, the Commission could only conclude Mace was able to return to unrestricted work, regardless of the placement of the burdent of proof.

Mace also contends that *Jones Construction Co.* v. *Martin,* 198 Va. 370, 94 S.E.2d 202 (1956), precludes the termination of his benefits on the basis of Dr. Kuhn's changed opinion concerning his ability to return to work.[3] As Mace correctly notes, *Jones Construction Co.* provides that "[a] change in condition means an actual change in the condition of the injured employee and not a mere change in the opinion of the medical expert as to the employee's pre-existing condition." 198 Va. at 375, 94 S.E.2d at 206. *See also Boxley* v. *Onorato,* 218 Va. 931, 243 S.E.2d 201 (1978); *Allen* v. *Mottley Construction Co.,* 160 Va. 875, 880, 170 S.E. 412, 414 (1933). According to Mace, a changed medical opinion concerning a claimant's ability to work must be predicated upon specific findings of a physiological change. Since Dr. Kuhn found no objective symptoms of physiological abnormality in any of his examinations, the appellees have failed to demonstrate a change in Mace's physical condition, according to Mace.

Mace's argument presupposes that the definition of "change of condition" given in *Jones Construction Co.* is still governing. It is not. Approximately three weeks after *Jones Construction Co.* was decided, the General Assembly enacted a statutory definition supplanting the one provided in *Jones Construction Co.*[4] The statutory definition, the appropriate standard in this case, does not limit change in condition to changes in an employee's physical condition, allowing in addition the

---

[3] In his oral argument, the appellees' attorney suggested that issues concerning the termination of Mace's benefits are not properly before this court because Mace failed to appeal the deputy commissioner's termination of benefits. According to the appellees, the portion of the deputy commissioner's award concerning the termination of benefits is final and cannot be questioned on appeal.

The appellees' contention would have merit if two awards, one terminating benefits and the other subsequently reinstating benefits, had been entered. An earlier, unappealed award terminating benefits would preclude a party's attack upon the termination in a subsequent appeal concerning a different award reinstating benefits. In this case, however, only one award was entered, one both terminating Mace's benefits and reinstating them at a later date. The appellees appealed that award. Consequently, the deputy commissioner's award never became final. A single award may not be segmented into component parts, some of which are final dispositions and others of which are not. An appeal of a deputy commissioner's award empowers the Industrial Commission to reexamine all of the deputy commissioner's conclusions.

[4] Acts 1956 (Extra Session) ch. 53, at 53. The urgency with which the General Assembly acted after *Jones Construction Co.* is reflected in the Assembly's declaration that the statutory definition was to become effective immediately.

consideration of *any* change in the conditions which affect the right to, amount of, or duration of compensation.[5] We hold that a change in an attending physician's opinion concerning an employee's ability to resume work meets the criteria detailed in Code § 65.1-8. Consequently, Dr. Kuhn's conclusion that Mace was able to resume unrestricted work provided a basis for the Commission's review of the initial award on the ground of a change in condition.

For the reasons stated, the Commission's award denying Mace additional benefits is affirmed.

*Affirmed.*

---

[5] Code § 65.1-8 provides: "Change in condition as used in this Act [the Virginia Workmen's Compensation Act] means a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded or terminated which would affect the right to, amount of, or duration of compensation.