COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Agee
Argued at Salem, Virginia


JAMES E. BERGER

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 2293-01-3     CHIEF JUDGE JOHANNA L. FITZPATRICK
                                             APRIL 2, 2002
DALTON LUMBER CORPORATION AND
 WOOD PRODUCTS OF VIRGINIA GROUP
 SELF-INSURANCE ASSOCIATION


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Robert E. Evans for appellant.

            Richard D. Lucas (Lucas & Associates, on
            brief), for appellees.


      James E. Berger (claimant) contends the Workers'

Compensation Commission (commission) erred in finding that

Dalton Lumber Corporation (Dalton) was not his statutory

employer pursuant to Code § 65.2-302(A).[1]  Finding no error, we

affirm the commission's decision.

_____

      * Pursuant to Code § 17.1-413 this opinion is not
designated for publication.

      [1] Code § 65.2-302(A) provides:

            When any person (referred to in this section
            as "owner") undertakes to perform or execute
            any work which is a part of his trade,
            business or occupation and contracts with
            any other person (referred to in this
            section as "subcontractor") for the
            execution or performance by or under such
            subcontractor of the whole or any part of
            the work undertaken by such owner, the owner

I.

We view the evidence in the light most favorable to the employer, who prevailed below.  See <u>Westmoreland Coal v. Russell</u>, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999).  The commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence.  See Code § 65.2-706; <u>James v. Capitol Steel Constr. Co.</u>, 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).  "The fact that there is contrary evidence in the record is of no consequence."  <u>Wagner Enters., Inc. v. Brooks</u>, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

So viewed, claimant sustained a compensable left eye injury on March 29, 2000 while working for Fred Robinson who built utility sheds on Dalton's property.

Dalton is a "planer mill" that purchases logs and rough cut lumber to plane into finished lumber for resale.  After the logs and rough cut lumber are planed into finished lumber they are graded for resale.  A certain amount of the planed rough cut lumber is not finished lumber quality and is graded below resale finished lumber.  Dalton found that this waste lumber could be used to build utility sheds for its customers and the profit

---

shall be liable to pay to any worker
employed in the work any compensation under
this title which he would have been liable
to pay if the worker had been immediately
employed by him.

-

from the sale of the utility sheds would offset the cost of the waste lumber. Dalton contracted with an individual to build this type of shed on its property with the waste lumber. When this individual ceased to build the sheds, Robinson undertook this work. Neither shed builder was an employee of Dalton.

Claimant worked full-time for another employer in an unrelated business and worked part-time for Robinson building utility sheds for a few hours in the morning. The utility sheds were built in an open work shed on Dalton's property. Robinson provided the tools and the knowledge of how to build the sheds. Dalton provided the materials and paid Robinson a certain amount per completed shed depending on size. Robinson paid claimant $40 per completed shed. Dalton posted orders for sheds of certain sizes and specifications on a board in the work shed. Once a utility shed was completed, Dalton would remove it, deliver it to the customer or place it for sale on its property.

It is undisputed that claimant was an employee of Robinson and that Robinson was not required by statute to provide workers' compensation insurance for him. The deputy commissioner found that Dalton was not claimant's statutory employer. The commission affirmed that finding and stated:

> In reaching this conclusion, we note the
> evidence establishes that Dalton Lumber,
> with the exception of one occasion after the
> claimant's injury, has not engaged in the
> trade, business or occupation of building
> sheds. While Dalton provided the materials
> and a location on its premises, without some

-

nexus that it was actually involved in the building of sheds or that building sheds was an integral part of its operation, no statutory employer relationship existed with Mr. Robinson and the claimant.

Claimant appealed that decision.

## II.

Appellant's sole issue on appeal is that the commission erred in finding Dalton was not his statutory employer. He argues that the manufacture of the utility sheds was an integral part of Dalton's trade, business and occupation because Dalton was involved in every aspect of the manufacture except the actual physical assembly of the sheds.

We note that "the issue whether a person is a statutory employee presents a mixed question of law and fact which must be resolved in light of the facts and circumstances of each case." Cooke v. Skyline Swannanoa, 226 Va. 154, 156, 307 S.E.2d 246, 247 (1983). The Supreme Court has stated:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.

Shell Oil Co. v. Leftwich, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972).

-

In Cinnamon v. International Business Machines Corp., 238 Va. 471, 384 S.E.2d 618 (1989), the Supreme Court extended the "Shell Oil" test delineating each prong of the test.

> One, the so-called "normal-work test", relates to the determination of statutory-employer status as defined in [now Code § 65.2-302(A)]. As the language of th[e] statute makes clear, that prong relates to an owner who engages an independent contractor to perform certain work. If the work out of which the industrial accident arose is, in the language of Shell Oil, work "normally carried on through [the owner's] employees rather than independent contractors", it is, in the language of the statute, a "part of [the owner's] trade, business or occupation". In such case, the owner is the statutory employer of the injured worker, whether directly employed by the independent contractor or by a subcontractor.

Id. at 476, 384 S.E.2d at 622 (internal citations omitted). The second prong of the test is inapplicable to the instant case.[2]

In this case, the commission applied the Shell Oil test and found "[i]n the current case, while the sale of sheds may be part of Dalton's occupation and business, there is no evidence that the actual manufacturing was work which it undertook." (Emphasis added.) The Shell Oil test and Code § 65.2-302(A) require that the work performed by the injured claimant be part of the trade or business of the alleged statutory employer and

---

[2] The second prong of the test, an exception to the first and sometimes labeled the "subcontracted-fraction test," relates to the determination of statutory-employer status as defined in Code § 65.2-302(B). See Cinnamon, 238 Va. at 476, 384 S.E.2d at 620.

-

as such the work must "normally [be] carried on through employees."  The evidence proved that Dalton's business was to plane lumber for resale.  It did not, except on one occasion after claimant's injury, build any utility sheds.  Dalton requested the size and specific type of utility shed to be built, sold the utility sheds, delivered the utility sheds to customers and made a profit from the sale of the utility sheds, but it did not build the utility sheds.

The commission's finding, that Dalton was not claimant's statutory employer, is supported by credible evidence and within the first prong of the Shell Oil test.

For the foregoing reasons, we hold that Dalton was not claimant's statutory employer, and the decision of the commission is affirmed.

Affirmed.

-