COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Powell
Argued at Richmond, Virginia


BIG LOTS STORES, INC. AND
   AMERICAN ZURICH INSURANCE COMPANY
                                                            MEMORANDUM OPINION[*] BY
v.        Record No. 0095-10-2                              JUDGE RANDOLPH A. BEALES
                                                                 NOVEMBER 9, 2010
JUDY DIANE BROWNING


                 FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Andrew M. Alexander (Kathryn Lea Harman; Semmes, Bowen &
              Semmes, on briefs), for appellants.

              William C. Carr, Jr. (Emroch & Kilduff, LLP, on brief), for appellee.


        Judy Diane Browning (claimant) was injured in a compensable accident on December 1,

2004, while working for Big Lots Stores, Inc.  The Workers' Compensation Commission

(commission) entered various awards for temporary partial or temporary total disability benefits.

The last award provided claimant with temporary total disability benefits beginning on June 14,

2005.  Big Lots Stores, Inc., and its insurer (collectively, Big Lots) submitted a letter to the

commission on February 13, 2009, requesting that claimant's award be terminated because she had

unjustifiably refused to cooperate with the reasonable vocational rehabilitation efforts that Big Lots

had provided for her.  The commission denied this request.

        On appeal of the commission's decision, Big Lots argues that the commission erred because

its evidence proved that claimant had refused to cooperate with its vocational rehabilitation efforts.[1]

--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although Big Lots lists two separate issues, they raise the same question.  Therefore, we
do not address the issues separately in this opinion.

After reviewing the commission's decision and the record in this case, we find that the commission did not err. Thus, we affirm the commission's denial of the motion to terminate claimant's benefits.

BACKGROUND

"In accordance with our well established standard of review, we view the evidence in the light most favorable to [claimant], who prevailed before the commission. The commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." Westmoreland Coal Co. v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999) (citation omitted). Using this well established standard of review, we find the evidence in this record established the following factual background.

Claimant was injured in a compensable accident on December 1, 2004, while she was attempting to help a customer in a Big Lots store located in Petersburg, Virginia. After this accident, Big Lots continued to employ claimant in a light-duty position, but after six months the company fired her because she could not perform all of her duties while she remained on the light-duty restrictions. The commission entered an open award of temporary total disability benefits, beginning on June 14, 2005, at a rate of $176.50 per week.

Claimant's work restrictions included no standing for more than two hours out of every eight hours, no heavy lifting, and no "significant squatting, bending or climbing." Big Lots provided vocational rehabilitation services to claimant and attempted to find a new job for her in the Petersburg area – a job that would comply with her restrictions and qualifications. However, those efforts were not successful.

In late September 2007, claimant decided to move to Alaska to live with her daughter and son-in-law. She based this decision on several factors. Her disability payments from Big Lots did not cover her expenses in Virginia, and she could not find appropriate and affordable housing, given her limited ability to walk up and down stairs. Once she moved to Alaska, her

family could assist – and did assist – claimant with her expenses, and she began to pay off the overdue bills that had mounted after her compensable accident.

The town in Alaska where claimant lived with her daughter was quite small – less than 1000 people. Fairbanks, Alaska, which is an hour-and-a-half drive from claimant's new home, is the closest city of any size.

Big Lots contacted Northern Rehabilitation Service (NRS) in Anchorage, Alaska, to help claimant find a job. Anchorage was approximately a six-hour drive from claimant's new home. The rehabilitation provider never personally met with claimant, but NRS had claimant's medical reports, had some written information from her, and talked to claimant over the phone.

Claimant continued to have limitations on her abilities to perform physical tasks after the move to Alaska. She explained that she could not take walks, could not do most household chores, and could not lift her grandchildren. She was only able to drive short distances with any regularity. When she went to Fairbanks – approximately once a month for a doctor's appointment or shopping – she had to wear a brace and always arrived feeling "real stiff."

Allison White, an employee of NRS, described her understanding of claimant's restrictions as "she should have a break from any standing every two or three hours and that she should limit her bending, squatting, and kneeling." In addition to her physical problems, White acknowledged that claimant's job search was limited by her lack of a high school diploma and her lack of computer skills.

NRS sent claimant two resumes based on the information that she provided to them. Over a six-month period, NRS sent claimant a total of thirteen job listings. Nothing in the record indicates that NRS followed up on any of these listings by contacting the potential employers to arrange interviews for claimant or to determine if she was qualified for the openings.

Eleven of the thirteen positions were located in Fairbanks, at least eighty miles away from claimant's home. One of the two listings that was near claimant's home involved working in a store on a local military base, but claimant had already contacted the base and discovered that she could not do the work that was required for that job. The other local position was a "parent line job," essentially answering telephone calls that would be routed to claimant's home phone. However, this job announcement stated that applicants were required to have six months of experience in order to be considered for the job, and claimant had no training in telephone work or in counseling parents.

Of the eleven job openings in Fairbanks that NRS sent to claimant, all but one seemed to require more standing or bending than claimant's restrictions would allow. Most of the positions had minimum certification, education, or experience requirements that claimant did not meet.

NRS sent a letter to claimant suggesting that, in addition to the listings that they sent, she look at several websites to find a job. However, nothing in the record indicates that she had a computer. In addition, NRS acknowledged that she did not have any computer skills.

Claimant did not follow up on the thirteen job openings, with the exception of the job on the military base.[2] She did inquire about a clerk's position in a local convenience store, an opening that NRS did not send to her, but the position required more lifting and bending than her restrictions allowed.

Big Lots filed a motion with the commission, asking that claimant's award be suspended because she had unjustifiably failed to cooperate with its reasonable vocational rehabilitation

---

[2] We note that claimant was under an open award for benefits. Big Lots does not contend that claimant was under a unilateral obligation to search for employment after entry of that award, but instead claims only that she had an obligation to cooperate with its reasonable vocational rehabilitation services to find employment for her.

efforts pursuant to Code § 65.2-603.[3]  Big Lots contended that claimant was uncooperative with NRS because she did not return forms quickly and because she did not apply for any of the thirteen positions that were sent to her.

The deputy commissioner found that Big Lots had not "demonstrated by a preponderance of the evidence that it performed the sufficient amount of screening to determine if the particular jobs offered the claimant were within her work capacity."  The commission agreed that Big Lots "failed to establish that the claimant refused to cooperate with vocational rehabilitation" because the job listings were "inadequate" and not "appropriate for the claimant."  Big Lots appealed this decision.

ANALYSIS

Big Lots argues that claimant unjustifiably failed to cooperate with the vocational services that it offered to her through NRS and, therefore, that her benefits should be suspended under Code § 65.2-603(B).

A.  Standard of Review

As the party asking for modification of an award, Big Lots had the burden before the commission to prove that claimant unjustifiably failed to cooperate.  Cf. Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438, 339 S.E.2d 570, 572 (1986).  The commission found that Big Lots did not meet this burden and that the vocational rehabilitation efforts were "inadequate" and not "appropriate for the claimant."

On appeal,

> we defer to the commission in its role as fact finder.  VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511 (2002).  "If supported by credible evidence, the factual findings of the commission are binding on appeal."  Tomes [v. James City Fire],

---

[3] The commission granted Big Lots's additional request that claimant undergo further medical testing to determine the extent of her disability.  This ruling was not appealed, and, therefore, we do not address it here.

> 39 Va. App. [424,] 430, 573 S.E.2d [312,] 315 [(2002)] (citations omitted). The commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halso Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 282, 623 S.E.2d 433, 436 (2005).

### B. Reasonable Vocational Rehabilitation Services

Under Code § 65.2-603(A)(3), after an award for benefits is entered, "[t]he employer shall also furnish or cause to be furnished, at the direction of the Commission, reasonable and necessary vocational rehabilitation services . . . ." Pursuant to subsection (B),

> [t]he unjustified refusal of the employee to accept such medical service or vocational rehabilitation services when provided by the employer shall bar the employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless, in the opinion of the Commission, the circumstances justified the refusal.

Therefore, if an employer offers reasonable vocational rehabilitation services to a claimant who is under an award, that claimant cannot refuse to cooperate with the employer unless the claimant's refusal is "justified."

Under the provisions of Code § 65.2-603(A)(3), reasonable vocational rehabilitation services must "take into account the employee's preinjury job and wage classifications; [her] age, aptitude, and level of education; the likelihood of success in the new vocation; and the relative costs and benefits to be derived from such services." This standard is similar to the evaluation used to determine if an employee has unjustifiably refused an offer of employment prior to entry of an award under Code § 65.2-510. See Ellerson v. W.O. Grubb Steel Erection Co., 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985) ("In order to support a finding based upon Code § 65.1-63 [recodified at Code § 65.2-510], the record must disclose (1) a bona fide job offer *suitable to the employee's capacity*; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job." (emphasis added)).

- 6 -

This Court considered Code § 65.2-603 in James v. Capitol Steel Constr. Co., 8 Va. App. 512, 382 S.E.2d 487 (1989), and affirmed the commission's decision that James unjustifiably refused to cooperate with the vocational rehabilitation efforts of his employer. We explained in reaching that decision:

> James' refusal to meet with Margeson in order to discuss his work options, experience, and limitations frustrated her job search efforts in his behalf. This evidence establishes that James' unconditional rejection of Margeson's efforts demonstrated an unwillingness on his part to cooperate with rehabilitation efforts. James' unilateral action thwarted Capitol Steel's efforts to secure employment within James' residual capacity.

Id. at 517, 382 S.E.2d at 490. Big Lots contends that this decision supports its position that the commission erred in denying its motion to suspend claimant's benefits.

However, unlike the facts in James, claimant here provided information to NRS. The employees of NRS did not testify that they lacked information from claimant and, therefore, could not find job openings for her. Nothing in this record suggests that claimant did not provide sufficient information to NRS. Instead, as the commission found, the evidence proved that NRS failed to use that information to adequately screen the job openings that were sent to claimant. NRS knew that claimant had significant restrictions on her ability to stand and bend, yet it sent her openings that required a significant amount of standing and/or bending. NRS knew that claimant did not have a high school diploma or its equivalent, yet it sent her openings that required a high school education. NRS sent her job openings that contained minimum requirements in training or experience that claimant did not have. Clearly, the commission could conclude that NRS did not screen these openings before sending them to claimant. Based on this evidence, we cannot find that the commission erred in its ruling that the vocational rehabilitation services were inadequate.

Big Lots also argues that this Court's opinion in <u>Newport News Shipbuilding & Dry Dock Co. v. Lawrence</u>, 38 Va. App. 656, 568 S.E.2d 374 (2002), supports its position that claimant unjustifiably refused to cooperate with NRS. However, the facts in <u>Lawrence</u> are also very different from the facts in this case. The vocational rehabilitation services provided to Lawrence included classes, testing, and scheduled interviews, all of which Lawrence disrupted or ignored. <u>Id.</u> at 659-60, 568 S.E.2d at 375. Here, NRS did not provide any classes or testing for claimant. NRS did not call potential employers and never set up any interviews for claimant. Claimant did fill out the forms that NRS sent to her, and NRS was able to create two resumes for her. Claimant's failure to follow through on job listings, for which she was either not qualified or not physically able-bodied to do, is not comparable to the level of unjustified refusal found in <u>Lawrence</u>.

Big Lots makes one additional argument in this appeal – that claimant's decision to move to a small town in a rural area of Alaska is proof that she failed to cooperate with its rehabilitation services. The dissenting commissioner found that claimant's decision to move, which increased the difficulty of finding a job for her, was an important factor in determining whether she unjustifiably refused to cooperate with Big Lots's efforts. However, Big Lots did not make this argument to the commission, and the commission did not address this issue in its opinion. Only the dissenting commissioner addressed this argument, and he appeared to raise this issue *sua sponte*. Therefore, pursuant to Rule 5A:18, we cannot now consider this argument on appeal. <u>See, e.g.</u>, <u>Uninsured Emplrs. Fund v. Wilson</u>, 46 Va. App. 500, 506 n.4, 619 S.E.2d 476, 479 n.4 (2005). We also note that Big Lots did not file a motion asking the commission to reconsider its ruling based on the point raised in the dissent. <u>See</u> <u>Williams v. Gloucester Sheriff's Dep't</u>, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003) (finding that a claimant failed to

preserve an issue for appeal, which was not argued before the commission, when he failed to file a motion to reconsider the commission's opinion).

CONCLUSION

We find that the record supports the commission's finding that the vocational rehabilitation services provided by Big Lots were inadequate and that Big Lots did not meet its burden of proving that claimant refused to cooperate with those services. When this case was before the commission, Big Lots did not raise the argument that claimant's move to Alaska established her failure to cooperate with Big Lots's vocational rehabilitation efforts. Therefore, we cannot consider this argument on appeal pursuant to Rule 5A:18.

Based on the findings noted above, we hold that the commission did not err in refusing the motion to suspend claimant's award, and we affirm the commission's decision.

Affirmed.